NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

*v.*

RIGOBERTO MEZA-CONTRERAS,
*Appellant.*

No. 1 CA-CR 15-0458
FILED 5-24-2016

Appeal from the Superior Court in Mohave County
No. S8015CR201300435
The Honorable Lee Frank Jantzen, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Adele Ponce
*Counsel for Appellee*

Law Offices of Harriette P. Levitt, Tucson
By Harriette P. Levitt
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Kenton D. Jones joined.

---

**O R O Z C O,** Judge:

¶1        Rigoberto Meza-Contreras (Defendant) appeals his convictions and sentences for transportation of dangerous drugs for sale (methamphetamine) and possession of drug paraphernalia (methamphetamine).  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Department of Public Safety Officer Callister conducted a traffic stop of a northbound pickup truck on I-15 in northwestern Arizona after noticing that a Global Positioning System (GPS) device affixed to the truck's windshield was unlawfully obstructing the driver's view.  Defendant was the truck's sole passenger.  Alonso, the driver, presented Officer Callister with his driver's license and a rental agreement showing the truck had been rented the previous day in California by Defendant's wife.  The rental agreement indicated that she was the only authorized driver of the truck, and the vehicle was to remain in California during the one-week rental period.

¶3        Officer Callister had Alonso exit the truck and proceed to the patrol vehicle.  In response to Officer Callister's questioning, Alonso stated he and Defendant were going to Colorado and planned to stay for fifteen days to visit friends.  When Officer Callister returned to the truck, Defendant stated that he and Alonso were going to stay in Colorado for one day to visit family before returning to California.

¶4        After speaking with Defendant, Officer Callister returned the driver's license and rental agreement to Alonso, issued him a warning regarding the GPS device attached to the windshield, and asked if he could search the truck.  According to the trial evidence, either Alonso or Defendant consented to a search, and Officer Callister ultimately found fourteen one-pound bags of methamphetamine located in the driver and passenger door panels.

¶5            The State charged Defendant with one count of transportation of dangerous drugs for sale (methamphetamine) (Count 1), a class 2 felony; and one count of possession of drug paraphernalia (methamphetamine) (Count 2), a class 6 felony.  Before trial, Defendant moved to suppress the drugs, arguing they were seized pursuant to an unconstitutional warrantless search of the truck.  The trial court held an evidentiary hearing and denied the motion.  Defendant also moved in limine to preclude, on hearsay grounds, Alonso's statements to Officer Callister regarding his and Defendant's travel plans to Colorado.  The court denied the motion.

¶6            Defendant was found guilty on both counts, sentenced, and timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1, 13-4031, and -4033.A.1 (West 2016).[1]

## DISCUSSION

### I.            Motion to Suppress

¶7            Defendant challenges the trial court's denial of his motion to suppress, arguing Officer Callister unreasonably detained him during the traffic stop.  Defendant, a native Spanish speaker, also argues that his consent to search the truck was involuntary because of his limited English proficiency.  Specifically, Defendant contends he was unaware that he could withhold his consent to the search, and he believed he was required to sign a consent form so Officer Callister could check the truck for "driveability."

¶8            Both the Fourth Amendment to the United States Constitution and Article 2, Section 8, of the Arizona Constitution prohibit unreasonable searches and seizures.  U.S. CONST. amends. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."), XIV; ARIZ. CONST. art. 2, § 8 ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law.").  In general, the federal and state protections are coterminous except in cases involving warrantless home entries.  *State v. Teagle*, 217 Ariz. 17, 22 n.3, ¶ 19 (App. 2007).  We therefore rely on Fourth Amendment jurisprudence in reviewing the trial court's suppression ruling.

---

[1]      We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

**¶9**          Generally, a warrantless search is per se unreasonable under the Fourth Amendment. *State v. Branham*, 191 Ariz. 94, 95 (App. 1997) (citing *State v. Castaneda*, 150 Ariz. 382, 389 (1986)). However, a warrantless search is valid if the search is conducted after voluntary consent is given. *State v. Paredes*, 167 Ariz. 609, 612 (App. 1991). "The voluntariness of a defendant's consent to search is a question of fact determined from the totality of circumstances." *Id*. (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49 (1973)). It is the State's burden to establish by clear and convincing evidence that a defendant's consent was freely and intelligently given. *Id*.

**¶10**          "An investigatory stop of a motor vehicle constitutes a seizure under the Fourth Amendment." *State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 118 (1996). An officer needs only reasonable suspicion that the driver has committed an offense to stop a vehicle. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). Reasonable suspicion exists when the totality of circumstances provides a "particularized and objective basis" for suspecting the particular person has violated the law. *Gonzalez-Gutierrez*, 187 Ariz. at 118 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

**¶11**          The exclusionary rule prevents the introduction of evidence seized in violation of a person's Fourth Amendment rights. *State v. Hackman*, 189 Ariz. 505, 508 (App. 1997). In reviewing the denial of a motion to suppress evidence purportedly seized in violation of the Fourth Amendment, we review only the evidence submitted at the suppression hearing, *State v. Blackmore*, 186 Ariz. 630, 631 (1996), and we view those facts in the manner most favorable to upholding the trial court's ruling. *State v. Sheko*, 146 Ariz. 140, 141 (App. 1985). The trial court determines the credibility of witnesses. *State v. Ossana*, 199 Ariz. 459, 461, ¶ 7 (App. 2001). Although we defer to the trial court's factual determinations, we review de novo its ultimate legal conclusion. *State v. Valle*, 196 Ariz. 324, 326, ¶6 (App. 2000).

**¶12**          Here, the record reveals, and Defendant does not dispute, that Officer Callister reasonably suspected Alonso was driving the truck in violation of Arizona law, which prohibits the operation of a motor vehicle with an object affixed to the windshield in a manner that obstructs or restricts the driver's clear view. *See* A.R.S. § 28-959.01.B; *see also* A.R.S. § 28-1594 (An officer "may stop and detain a person as is reasonably necessary to investigate an actual or suspected violation" of Title 28). Accordingly, the initial stop of the truck to investigate the placement of the GPS device and Officer Callister's review of Alonso's driver's license and the rental agreement did not violate the Fourth Amendment. *See Paredes*, 167 Ariz. at 611.

¶13        Instead, Defendant contends that the stop became an unconstitutional detention after Officer Callister issued Alonso the warning and returned the license and rental agreement to him.[2] Defendant does not assert, and the record does not reflect, that his post-warning encounter with Officer Callister was involuntary or was unreasonably prolonged. *See Teagle*, 217 Ariz. at 23, ¶ 24 (citing *United States v. Olivera-Mendez*, 484 F.3d 505, 510-11 (8th Cir. 2007) (stating that "an officer does not violate the Fourth Amendment by asking a few questions about matters unrelated to the traffic violation, even if this conversation briefly extends the length of the detention"). Furthermore, the Fourth Amendment not only permits an investigating officer to ask questions unrelated to the traffic stop, it allows the officer to request consent to search the vehicle. *See generally Ohio v. Robinette*, 519 U.S. 33 (1996) (consent to search was voluntary where a defendant was stopped for speeding, officer gave a verbal warning and returned defendant's driver's license, and then asked defendant if he had any contraband or weapons in the car; defendant replied "no" and consented to search of the car). "An officer's inquiries into matters unrelated to the justification for the traffic stop do not convert the encounter into something other than a lawful seizure, so long as the inquiries do not measurably extend the stop's duration." *Ariz. v. Johnson*, 555 U.S. 323, 325 (2009).

¶14        The traffic stop here was not "measurably" delayed to the extent it became unlawful. The record shows Officer Callister, immediately after issuing the warning, had a short conversation with Alonso about the weather and asked if he had anything illegal in the truck. When Alonso said that he did not, Officer Callister requested and obtained Alonso's signature on a consent form that detailed Alonso's rights in both English and Spanish. Officer Callister then returned to the truck where Defendant was seated and obtained his oral and written consent to search the truck. As the trial court noted, nothing in the record indicates Officer Callister exhibited overbearing authority at any time during his encounter with Defendant. Importantly, Defendant testified at the suppression hearing that he felt free to leave the scene. Under these circumstances, the court did not abuse its discretion in finding Defendant's short post-warning

_____

[2]        The State argues this issue should be reviewed for fundamental error because Defendant did not raise these specific arguments with the trial court. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). However, because we discern no error, we need not engage in fundamental error review. *See State v. Lavers*, 168 Ariz. 376, 385 (1991) ("Before we may engage in a fundamental error analysis, however, we must first find that the trial court committed some error.").

encounter with Officer Callister was consensual. No Fourth Amendment violation occurred. *See Johnson*, 555 U.S. at 325.

**¶15** Regarding Defendant's consent to the vehicle search, the record reflects that he read—or at least had the opportunity to read—and signed a consent form that, in both English and Spanish, explained he could refuse to allow the search, he could withdraw his consent at any time, and any evidence discovered during a search could be used in court. Although Defendant testified he did not read the consent form and he believed that Officer Callister was going to inspect the truck not for contraband but for "driveability" based on the officer's use of the Spanish word "inspeccionar" rather than "revisar," the court was not required to accept this testimony. Indeed, the consent form expressly uses the terms "revisado" and "revisen," conjugations of the Spanish verb "revisar," and Officer Callister testified that Defendant appeared to understand his oral request in English to search the truck after Defendant denied anything illegal was in it.

**¶16** Defendant's encounter with Officer Callister after Alonso received the traffic warning was consensual and the traffic stop was not unduly extended. Defendant also voluntarily consented to the vehicle search. Accordingly, Officer Callister's search of the truck and the resulting seizure of the methamphetamine did not violate Defendant's rights under the Fourth Amendment. The court did not err in denying the motion to suppress.

## II. Motion in Limine

**¶17** Defendant argues the court should have granted his motion in limine to preclude admission of Alonso's statements to Officer Callister explaining he and Defendant were planning to stay in Colorado for fifteen days. Defendant contends these statements are hearsay and their improper admission violated his constitutional right to confront Alonso. "'Hearsay' [is] a statement . . . offer[ed] in evidence to prove the truth of the matter asserted[,]" and generally is not admissible as evidence. Ariz. R. Evid. 801(c), 802.

**¶18** The Confrontation Clause of the Sixth Amendment protects a defendant's ability to prove a witness's motive or bias. U.S. CONST. amend. VI; *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974). "[T]he Confrontation Clause prohibits the admission of testimonial evidence from a declarant who does not appear at trial unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant." *State v. King*, 213 Ariz. 632, 637, ¶ 17 (App. 2006) (citing *Crawford v. Wash.*, 541 U.S. 36, 68 (2004)).

"The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford,* 541 U.S. at 59 n.9. Thus, the Confrontation Clause is inapplicable to non-hearsay statements.

**¶19**      We generally review a trial court's ruling on the admissibility of evidence for a clear abuse of discretion. *King*, 213 Ariz. at 636, ¶ 15. However, we review de novo challenges to admissibility based on the Confrontation Clause. *Id.*

**¶20**      The State's purpose in admitting Alonso's statement that he and Defendant were going to stay in Colorado for fifteen days was not to prove that the two men were, in fact, planning on that length of sojourn. Rather, the evidence was presented to show that Alonso and Defendant gave different responses about their travel plans. The different responses, both of which were in conflict with the one-week rental period of the truck, were suspicious and provided a basis for Officer Callister to ask Alonso and Defendant whether the truck contained contraband, and when they answered in the negative, to request permission to search the vehicle. The evidence, therefore, is not hearsay, and its admission did not violate Defendant's rights under the Confrontation Clause. We find no abuse of discretion or legal error in denying Defendant's motion in limine.

**III.**          *Willits* **Instruction**

**¶21**      During his search of the truck, Officer Callister noticed a one-inch gap between the driver's door and the door's interior panel. He also noticed a rivet on the driver-side floor board, which in addition to the gap and mud found on the door panel, "showed tampering[.]" Officer Callister proceeded to roll down the door window, but the window would not fully retract into the door. Officer Callister shined his flashlight inside the door panel and observed clear plastic packages containing the drugs, whereupon he arrested Defendant and Alonso. Officer Callister proceeded to seize the packaged drugs from the door panels. He did not seize the rivet and he did not photograph it.

**¶22**      Officer Callister also did not seize luggage found in the truck. Although he searched the luggage, he found only clothes and toiletries. The luggage remained in the truck when the vehicle was eventually returned to the rental company.

**¶23**      After the close of evidence, Defendant requested the jury be instructed pursuant to *State v. Willits*, 96 Ariz. 184 (1964), with respect to the

rivet and the luggage. The trial court declined to give the requested instruction, a ruling Defendant argues was reversible error.

**¶24**     A *Willits* instruction tells jurors that they may draw an inference from the State's loss or destruction of material evidence that the evidence would have been unfavorable to the State. *State v. Fulminante*, 193 Ariz. 485, 503, ¶ 62 (1999). However, a defendant is not automatically entitled to a *Willits* instruction when evidence is destroyed or not retained. *State v. Murray*, 184 Ariz. 9, 33 (1995). Further, a *Willits* instruction is not required merely because the State could have undertaken a more thorough or exhaustive investigation. *Id.* To be entitled to a *Willits* instruction, the defendant must prove that the State failed to preserve evidence that is material, accessible, and which might tend to exonerate the defendant. *Id.* We review the refusal to give a *Willits* instruction for an abuse of discretion. *State v. Speer*, 221 Ariz. 449, 457, ¶ 39 (2009).

**¶25**     We do not see the materiality of the rivet and the luggage or how those items had a tendency to exonerate Defendant. As for the rivet, Officer Callister testified that although the rivet initially indicated the truck had been tampered with, it ultimately did not match the rivets that attached the door panel to the door and therefore it had no evidentiary value. Regarding the luggage, Officer Callister testified that he did not retain it because "there's nothing there to aid in prosecution or assist in proving innocence of anybody there. It's just items that belonged to them."

**¶26**     Because the rivet and the luggage did not have any apparent exculpatory value at the time of the search, the State was not required to retain the items, and Defendant was not entitled to a *Willits* instruction. *See State v. Davis*, 205 Ariz. 174, 180, ¶ 37 (App. 2002) (to merit a *Willits* instruction, "[e]vidence must possess exculpatory value that is apparent before it is destroyed."). Furthermore, Defendant's speculation that the contents of the luggage would have tended to support his and Alonso's conflicting statements regarding how long they planned to stay in Colorado does not sufficiently establish the exculpatory nature of such evidence as to require a *Willits* instruction.[3] *See State v. Glissendorf*, 235 Ariz. 147, 150, ¶ 9 (2014) ("To show that evidence had a 'tendency to exonerate,' the defendant

---

[3]     In his brief, Defendant implies that he told Officer Callister he was planning to stay in Colorado for one day while Alonso would be staying there longer. The record, however, reflects that Defendant informed Officer Callister that both he and Alonso were going to stay for one day. The record also establishes that Alonso explained to Officer Callister that both he and Defendant were planning on staying in Colorado for fifteen days.

must do more than simply speculate about how the evidence might have been helpful. . . . [T]here must be a real likelihood that the evidence would have had evidentiary value."). Nothing in the record indicates what items of clothing were in the luggage, and in any event, regardless of the clothing items, they would not be probative of Defendant's knowledge of the fourteen pounds of methamphetamine found in the truck's door panels. The trial court acted within its discretion in denying Defendant's request for a *Willits'* instruction.

### IV.        Count 2:  Pronouncement of Sentence

**¶27**        At sentencing, the trial court ordered a mitigated seven-year prison sentence without specifying for which count the sentence was imposed. Defendant requests he be resentenced on Count 2, because the seven-year sentence was apparently intended to apply to the class 2 felony in Count 1, yet could be construed as unlawfully applying to the class 6 felony in Count 2.

**¶28**        Defendant's request is moot. The trial court issued a supplemental ruling approximately three weeks after sentencing Defendant. In that ruling, the court clarified that Defendant's sentence for Count 2 is a mitigated ten-month prison term to run concurrently with the seven-year sentence imposed for Count 1.

### CONCLUSION

**¶29**        For the foregoing reasons, we affirm Defendant's convictions and the resulting sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama